# United States Court of Appeals
## For the First Circuit

No. 22-1521

TOWN OF MILTON, MASSACHUSETTS,

Petitioner,

v.

FEDERAL AVIATION ADMINISTRATION and BILLY NOLEN, Acting Administrator of the Federal Aviation Administration,

Respondents.

PETITION FOR REVIEW OF AN ORDER OF
THE FEDERAL AVIATION ADMINISTRATION

Before

Montecalvo, Selya, and Lynch,
Circuit Judges.

Karis L. North, with whom Murphy, Hesse, Toomey & Lehane, LLP was on brief, for petitioner.
Thomas J. Dougherty on brief for Congressman Stephen F. Lynch, State Senator Walter F. Timilty, and State Representative William J. Driscoll, Jr., amici curiae.
David S. Frankel, Attorney, Appellate Section, Environment and Natural Resources Division, U.S. Department of Justice, with whom Todd Kim, Assistant Attorney General, Justin D. Heminger, Attorney, Appellate Section, Environment and Natural Resources Division, Scott E. Mitchell, Assistant Chief Counsel, Federal Aviation Administration, Laura Price, Acting Manager, Airports and Environmental Law, Office of the Chief Counsel, and Evan Baylor, Attorney Advisor, Airports and Environmental Law, Office of the Chief Counsel, were on brief, for respondent.
Cindy L. Christiansen, PhD and John Rowe, pro se, on brief for themselves as amici curiae.

November 30, 2023

**SELYA**, **Circuit Judge**. The Federal Aviation Administration (FAA) initiated the process of shifting from ground-based navigation to satellite-based navigation at Boston's Logan International Airport (Logan). This shift, which was aimed at increasing the safety and efficiency of flight procedures, relegated certain approaches and departures at Logan to a narrower swath of airspace that covers the Town of Milton, Massachusetts (the Town). Dismayed by the possibility of heavier air traffic over its terrain, the Town objected to the FAA's proposed course of action and mounted an extensive campaign to block the implementation of the new flight procedure.

The campaign came to naught: the FAA rejected the Town's entreaties and entered a final order authorizing the new flight procedure. The Town, a mostly residential community which is located about ten miles southwest of Logan, now petitions for judicial review of the FAA's final order. Its location, the Town says, subjects it to heavy air traffic, and many residents decry the resulting noise.

In its petition for review, the Town contends that the FAA's environmental analysis of the noise impacts failed to comply with the agency's obligations under the National Environmental Policy Act (NEPA), see 42 U.S.C. §§ 4321 - 4370m-11, and that the noise from this challenged flight procedure disturbs Town residents. We do not reach the merits of these contentions.

The FAA responds that the Town does not have standing to challenge its final order because it failed to satisfy the first prong of the standing test: injury in fact to its own interests. See TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203-04 (2021). We agree with the FAA. The harms that the Town asserts are not legally cognizable harms to the Town itself. Consequently, we dismiss the Town's petition for want of Article III standing. In reaching this result, we agree with other courts of appeals that have dismissed municipal NEPA challenges to FAA orders for want of Article III standing because those challenges failed to show cognizable injury to the municipalities themselves. See, e.g., City of N. Miami v. F.A.A., 47 F.4th 1257, 1277 (11th Cir. 2022); Arapahoe Cnty. Pub. Airport Auth. v. F.A.A., 850 F. App'x 9, 11 (D.C. Cir. 2021) (per curiam); cf. City of Olmsted Falls v. F.A.A., 292 F.3d 261, 267-68 (D.C. Cir. 2002) (explaining that municipality had standing only because it showed injury to itself based on Clean Air Act requirements with which it had to comply).

I

Before turning to the parties' arguments, we briefly rehearse the law on standing. Federal courts are courts of limited jurisdiction that may entertain only "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. "For there to be a case or controversy under Article III, the [petitioner] must have a 'personal stake' in the case — in other words, standing."

TransUnion, 141 S. Ct. at 2203 (quoting Raines v. Byrd, 521 U.S. 811, 819 (1997)).  "As the party invoking federal jurisdiction, the [petitioner] bear[s] the burden of demonstrating that [it has] standing."  Id. at 2207-08 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).  The petitioner "must show (i) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the [respondent]; and (iii) that the injury would likely be redressed by judicial relief."  Id. (citing Lujan, 504 U.S. at 560-61).

Concreteness and particularization are independent and necessary prerequisites of the injury in fact requirement.  See Spokeo, Inc. v. Robins, 578 U.S. 330, 334 (2016).  To be concrete, "the asserted harm [must have] a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts — such as physical harm, monetary harm, or various intangible harms including . . . reputational harm."  TransUnion, 141 S. Ct. at 2200 (quoting Spokeo, 578 U.S. at 340-41).  To be particularized, the harm "must go beyond a generalized grievance[] to manifestly affect the [petitioner] in a personal and individual way."  Lyman v. Baker, 954 F.3d 351, 361 (1st Cir. 2020) (first alteration in original) (internal quotations omitted); see Save Our Heritage, Inc. v. F.A.A., 269 F.3d 49, 55 (1st Cir. 2001) (explaining that, in order to satisfy the injury in fact

requirement, "the petitioner [must be] someone who has suffered or is threatened by injury in fact to a cognizable interest").

In order to satisfy the traceability (causation) and redressability requirements, a petitioner must "allege personal injury [that is] fairly traceable to the [respondent]'s allegedly unlawful conduct and likely to be redressed by the requested relief."  California v. Texas, 141 S. Ct. 2104, 2113 (2021) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)). If the petitioner fails to show any of these three elements, we cannot review the proffered matter on its merits.  See Katz v. Pershing, LLC, 672 F.3d 64, 75-76 (1st Cir. 2012).

## II

Against this backdrop, we proceed to appraise the particulars of the case at hand.  The parties' dispute about standing focuses on whether the Town has shown injury in fact.  In its opening brief, the Town argues that it has suffered injury because of:  "the impact of noise on its residents, including increased annoyance and complaints about noise made both to Town officials and to . . . the FAA"; and the "considerable time and money" that it spent "addressing these issues."  We examine each of these arguments but find them wanting.

### A

The Town first argues that it has suffered injury in fact in the form of "the impact of noise on its residents."  Black-

letter law dictates that harm to others, such as the Town's residents, is insufficient to show an injury that is particularized to the petitioner itself.  See Lujan, 504 U.S. at 560 n.1 (noting that "the injury must affect the [petitioner] in a personal and individual way" to be "particularized"); Sierra Club v. Morton, 405 U.S. 727, 734-35 (1972) ("[T]he 'injury in fact' test requires . . . . that the party seeking review be [it]self among the injured.").  We first explore the injury in fact requirement in the context of municipal standing, and then we turn to the specifics of some of our prior cases that the Town cites in its defense.

1

Several cases from other courts of appeals have established that municipalities cannot assert that they have been injured because of an alleged injury to their residents.  For example, in City of Olmsted Falls v. FAA, the D.C. Circuit examined whether the City of Olmsted Falls, Ohio, had standing to sue the FAA for its approval of a runway improvement project at Cleveland Hopkins International Airport.  See 292 F.3d 261, 265, 267 (D.C. Cir. 2002).  Relying in part on harm to its residents, the City contended that the FAA's approval violated, inter alia, NEPA and the Clean Air Act (CAA), see 42 U.S.C. §§ 7401-7671q.  See id. at 267.

The D.C. Circuit rejected the City's argument that "it may represent its citizens, much as a private association could represent its members' interests." Id.  The court held that this argument "misconceive[d] the very concept of associational standing" as "[t]he City does not have 'members' who have voluntarily associated, nor are the interests it seeks to assert here germane to its purpose." Id. at 267-68 (emphasis in original).  Instead, as the court held, "the City [was] effectively attempting to assert the alleged interests of its citizens under the doctrine of parens patriae." Id. at 268.  It reasoned that, because "a state may not sue the federal government on behalf of its citizens as parens patriae,"[1] municipalities, which "derive their existence from the state and function as political subdivisions of the state," also "presumably" cannot sue the federal government under this doctrine.[2]  Id.

In City of North Miami v. FAA, the Eleventh Circuit endorsed this reasoning and held that the municipal petitioners

---

[1] A state cannot sue the federal government, asserting the interests of its citizens as parens patriae, because "it is the United States, and not the state, which represents [a state's citizens] as parens patriae." Massachusetts v. Mellon, 262 U.S. 447, 485-86 (1923).

[2] In Arapahoe County Public Airport Authority v. FAA, the D.C. Circuit recently reaffirmed its reasoning in Olmsted Falls and rejected the municipal petitioners' NEPA challenge to an FAA order, which claimed standing based on harms, such as noise impacts, to residents.  See 850 F. App'x 9, 11 (D.C. Cir. 2021) (per curiam).

did not have standing to challenge the FAA's alleged failure to comply with NEPA based on impacts, such as increased noise, to their residents.  See 47 F.4th 1257, 1277 (11th Cir. 2022).  The court concluded that, "[b]y invoking the interests of their residents, the municipalities are attempting to sue the FAA under a parens patriae theory."  Id.

The Town attempts an end-run around this body of case law by disclaiming any intent to represent its residents as parens patriae.  Relatedly, it denies that it "bas[es] its claims of harm on individual impacts to citizens."  In defense of these contentions, the Town mistakenly relies on language in Olmsted Falls, in which the court, "[t]aking a generous reading of the petitioner's materials," held that the City had "alleged harm to its own economic interests based on the environmental impacts of the [FAA-]approved project."  292 F.3d at 268.  Unlike the Town, the City in Olmsted Falls showed injury to itself because the CAA imposed a requirement on the City to comply with air quality standards.  See id.

In reaching this conclusion, the D.C. Circuit cited a prior opinion in which it had blessed a showing of injury in fact by municipal petitioners on the theory that new federal automobile fuel economy standard would "adversely affect[] air quality in their urban areas, making it more difficult for them to comply, as they must, with the air quality standards imposed upon them by the

[CAA]."  Id. (emphasis supplied) (citing City of Los Angeles v. Nat'l Highway Traffic Safety Admin., 912 F.2d 478, 484-85 (D.C. Cir. 1990), overruled on other grounds by Florida Audubon Soc'y v. Bentsen, 94 F.3d 658 (D.C. Cir. 1996)).  This alleged increase in difficulty complying with CAA standards inflicted a "constitutionally cognizable injury."  City of Los Angeles, 912 F.2d at 485.  Here, however, the Town sued only under NEPA, which — unlike the CAA — does not impose standards with which a municipality must comply.[3]

**2**

In further defense of its position, the Town cites a line of cases in which we reviewed municipal challenges to FAA actions based on harms such as increased traffic congestion.  See, e.g., Town of Marshfield v. F.A.A., 552 F.3d 1 (1st Cir. 2008); Town of Winthrop v. F.A.A., 535 F.3d 1, 7 (1st Cir. 2008); Save Our Heritage, Inc. v. F.A.A., 269 F.3d 49, 55 (1st Cir. 2001).  These cases are inapposite, and our decision in Save Our Heritage illustrates the point.  There, we declined to decide whether the municipal petitioners themselves had standing based on their

---

[3] The determination of the Olmsted Falls court that the municipal petitioner had standing to advance all its statutory grievances, predicated on injury under only one of those statutes, predated TransUnion.  This timing bears mention because the TransUnion court stated that "standing is not dispensed in gross; rather, [petitioners] must demonstrate standing for each claim that they press."  141 S. Ct. at 2208; see Webb v. Injured Workers Pharmacy, LLC, 72 F.4th 365, 372 (1st Cir. 2023).

"direct interest" (that is, injury from the FAA's ruling).  Save Our Heritage, 269 F.3d at 55.  We recognized that deciding the issue was unnecessary because two joint petitioners (non-profit landowners) "would be affected by both noise and air pollution," and "[i]t is sufficient for the case to proceed if at least one petitioner has standing."  Id.  Any statements about the likely standing of the municipal petitioners were merely dictum.

Nor is the Town's argument supported by our decision in Winthrop, which also featured two local residents as individual petitioners (both of whom had standing).  See 535 F.3d at 3.  In contrast, the Town is the sole petitioner seeking standing here — and there are no individual resident petitioners.

So, too, our decision in Marshfield does not bear the weight that the Town piles upon it.  See 552 F.3d 1.  The municipal petitioner there brought a claim under the National Historic Preservation Act, see 16 U.S.C. §§ 470 - 470x-6 (2000) (current version at 54 U.S.C. §§ 300101 - 320303), which clearly imposes some obligations concerning historic sites in and around a municipality.  See Marshfield, 552 F.3d at 5.  For that reason, there was no need for a discussion of standing.  Here, unlike in Marshfield, the Town has not identified any concrete harm to a municipally owned site within its borders.[4]  The case before us

---

[4] Although the Town makes a passing reference to "pollution impacts" on the Town itself, it neither elaborates on the nature

remains factually and legally distinct from the cases to which the Town alludes.

The Town, in a footnote in its reply brief, points to one more case that it says found that a municipality may sue to recover damages on behalf of itself and "other similarly injured and situated persons," at least under Mass. Gen. Laws ch. 93A, § 11. Town of Randolph v. Purdue Pharma L.P., No. 19-10813, 2019 WL 2394253, at *5 (D. Mass. June 6, 2019). That decision is not binding authority and — in any event — fails to advance the Town's cause. First, because Randolph already required a remand to state court on other jurisdictional grounds, see id. at *5, a standing discussion would have been superfluous. Second, the complaint there sought damages for "decreased tax revenue and diminished property values" as well as "'municipal expenditures' resulting from the opioid epidemic," id. at *1, which are substantially different than the injuries that the Town has alleged here. Thus, Randolph furnishes no comfort for the Town's standing argument.

B

The Town next argues that it has suffered concrete economic injury as a result of the expenses it incurred in challenging the new flight procedure. The Town describes these costs, which derive from assorted activities: Town officials

---

of these impacts nor identifies any facts that we could construe as supporting such a theory of harm.

devoted "considerable time and money [to] addressing" residents' noise complaints; Town officials attempted to coordinate with Logan personnel, the FAA, and state and federal elected officials; the Town formed an advisory committee on airplane noise composed of Town residents; the Town purchased noise monitors, which Town residents staffed as volunteers; and the Town retained lawyers to represent it both at the administrative level and in this proceeding.[5]  These activities, the Town complains, constituted injury to the Town because they diverted "precious municipal resources" from other core functions that the Town must perform.

We reject this theory of standing, which again fails to pass muster upon consideration of the first element of the standing inquiry:  injury in fact.  Inasmuch as the municipal government exists to support its citizens, any action that it takes inherently serves that purpose and cannot be an injury to it.  Put another way, a municipality cannot claim that reallocating municipal resources to address one of its residents' concerns is an injury because this decision simply represents a policy preference to prioritize one government function over another.  Cf. Conn. Citizens Def. League, Inc. v. Lamont, 6 F.4th 439, 447 (2d Cir.

---

[5] We summarily disregard this final assertion of harm because attorneys' fees cannot constitute injury in fact.  See Thole v. U.S. Bank N.A., 140 S. Ct. 1615, 1619 (2020) (explaining that attorneys' fees did not give petitioners a "concrete stake in the lawsuit").

2021) (holding that a non-profit organization's allocation of resources to effectuate responsibilities in furtherance of its mission cannot constitute injury in fact because this action does not divert resources from its "current activities").

The Town asseverates that it has been injured by allocating its "limited funds" to advocate against the imposition of the new flight procedure over the Town rather than to carry out other "statutory responsibilities and obligations." Yet, the Town also denies that this asseveration relies on an associational standing theory. It concedes that "a municipality is not like an advocacy organization" and "engagement with the FAA is not its mission." To the Town's credit, a municipality in many ways is unlike organizations to which the associational standing cases refer. It is not a voluntary association of members with common interests. Nor is the Town an association whose purpose is to represent and advance a common interest of its members. After all, the Town was not formed under Massachusetts law to pursue an ideological mission.

These differences, though, mean that a municipality will have more difficulty running the standing gauntlet than an organization. A resource-diversion argument is available only to petitioners who allege associational standing[6] — and only to those

---

[6] Here, we use the term "associational standing" to include "organizational standing."

who have shown that "the challenged conduct frustrated their organizational missions and that they diverted resources to combat that conduct." Friends of the Earth v. Sanderson Farms, Inc., 992 F.3d 939, 942 (9th Cir. 2021); see Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982) (holding that an organization suffers injury in fact when its key activities are "perceptibly impaired" and its resources "consequent[ly] drain[ed]"); Equal Means Equal v. Ferriero, 3 F.4th 24, 29-30 (1st Cir. 2021) (rejecting associational standing predicated on organizations' expenditure of "additional resources to ensure that the law [benefitting their members] will be treated as having legal effect"). As we have discussed, the Town is not an association that can represent its members' interests. Thus, its reliance on principles from associational standing case law is misplaced.

The Town acknowledges the force of this comparison but counters that these differences suggest that a municipality has a stronger justification for a resource-diversion theory of harm. It maintains that its efforts exceed "mere advocacy," pointing to "the cost of purchasing and deploying its own field noise monitors, attended by Town volunteers." We fail to see how this example materially differs from the type of work that an advocacy organization might perform.

## III

In its reply brief, the Town for the first time argues a new form of alleged injury: that it was "harmed when residents s[old] their homes and move[d] away from Milton because of noise impacts, which" caused fiscal and reputational harm. Because the Town did not raise this argument in a timely and complete manner, we deem it waived. See Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990) (explaining that argument not raised until appellant's reply brief is deemed waived); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that argument made "in a perfunctory manner, unaccompanied by some effort at developed argumentation, [is] deemed waived").

The newly asserted injury assumes that an exodus of residents hurts the Town's financial interests and reputation in a legally cognizable manner, but introducing these assumptions extends the argument well beyond that which the Town advanced in its opening brief. Moreover, that the Town's coffers are shrinking (the financial injury that the new theory seems to assert) is a wholly different harm than the Town having to reallocate existing funds from core functions to challenge the new flight procedure (the only theory of financial injury set forth in the Town's opening brief). Introducing this asserted harm, coupled with the new assertion of reputational harm, plainly extends the argument beyond that which the Town advanced in its opening brief. It

follows that the Town's new standing argument is both legally and factually distinct from the arguments advanced in its opening brief.  Given these facts, we deem this argument waived.

### IV

We need go no further.  For the reasons elucidated above, we dismiss the Town's petition for want of Article III standing. Each party shall bear its own costs.

**Dismissed**.